**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT WEST VIRGINIA**
**Charleston Division**

**UNITED STATES OF AMERICA,**

**v.**                                                    **CASE NO.  2:18-cr-00104-1**

**DEVIN ALLEN WOLFE.**

**DEFENDANT'S SENTENCING MEMORANDUM**

Defendant, Devin A. Wolfe, by his counsel, submits this Memorandum outlining the

various 18 U.S.C. § 3553(a) factors for the Court's consideration at his upcoming November 8,

2018, sentencing hearing.

**A.      No Legal or Factual Objections:**

Mr. Wolfe asserts no legal objections to the PSR.  His total offense level, after the

reduction for acceptance of responsibility, comes to 32.  (PSR, Paragraph 51). And with a

Criminal History Category of I, the advisory guideline range is 121 months to 188 months.

(PSR, Paragraph 79).  He is subject to a mandatory minimum term of imprisonment of five years

as part of his guilty plea to receipt of images of child pornography.  (PSR, Paragraph 79).  He is

facing the imposition of a mandatory minimum term of supervised release of five years with the

potential for a lifetime term of supervision. (PSR, Paragraph 80).

**B.      18 U.S.C. § 3553(a) Factors for Consideration:**

The advisory guideline range for Mr. Wolfe's case would impose a term of imprisonment

that would be significantly greater than necessary for purposes of punishing him for his criminal

conduct.  For example, the § 2G2.2 guideline calculation overlooks the following mitigating 18

U.S.C. § 3553(a) factors concerning:

> (1)     Mr. Wolfe's role in the offense conduct involved using the internet
> to obtain images and videos of child pornography solely for his viewing purposes

1

as opposed to being involved in any more serious conduct such as the production of such materials or any improper solicitation of any minor through the Internet;

(2)     The use of the § 2G2.2 guideline in child pornography cases results in an excessive offense level calculation where the majority of enhancements are not empirically based and no longer adequately distinguish among offenders based on their degrees of culpability;

(3)     The Court's ability to closely monitor Mr. Wolfe's activities after he serves his mandatory minimum sentence of five years during a lengthy term of supervised release that would include continued participation in a sex offender treatment program with polygraph testing as well as other more stringent conditions over a longer period of time than a typical federal offender;

(4)     Mr. Wolfe's document mental and emotional health issues.  Do to these issues he is rendered totally disabled through social security, requiring regular assistance from his parents for daily living; and

(5)     Mr. Wolfe's conviction resulted from the government's charging decision authorizing him to plead guilty to the offense of *receipt* rather than *possession* of child pornography.  The offense of receipt of child pornography, carries penalties that are much more substantial than the penalties associated with the offense of possession.  Receipt carriers a statutory mandatory minimum sentence of incarceration of five years, as well as a corresponding base offense level of 22 under U.S.S.G. § 2G2.2.  Historically, similarly situated defendants in this district had been allowed to plead guilty to the offense of possession rather than receipt, which does not carry a mandatory minimum sentence of five years and results in a lower corresponding base offense level of 18 under U.S.S.G § 2G2.2.

Based on the foregoing, Mr. Wolfe would ask this Court to consider all of these factors to impose a variance sentence of a term of imprisonment of 60 months incarceration followed by a a substantial term of supervised release with home confinement as deemed appropriate or necessary by the Court.  This type of sentence would provide a significant punishment for someone like Mr. Wolfe who is being sentenced for his first felony conviction and who has never spent any time in custody.   As Mr. Wolfe will be serving an extended period of supervised release that will include restrictive conditions curtailing his access to the Internet, other minors,

and requiring his continued participation in a sex offender treatment program, the suggested

sentence would strike an appropriate balance for imposing a sufficient, but not greater than

necessary, punishment for his downloading activities involving child pornography.  Mr. Wolfe

would rely upon the following factors in support of this suggested sentence:

(1)     **The nature and circumstances concerning Mr. Wolfe's involvement with child pornography and his personal circumstances warrant consideration for the proposed variance sentence**.

Mr. Wolf's unlawful conduct involved receiving, possessing, and viewing child

pornography.  There is no evidence that Mr. Wolfe has ever had any desire or intentions of ever

soliciting a minor to engage in sex. He was not involved in the actual production of any of the

contraband content found in his possession. He was not engaged in any sexually explicit chats

with any minors in any internet chat rooms nor was there any allegation that he had ever initiated

any inappropriate contact with any minor in the community.   He did not maintain any internet

websites where child pornography could be obtained and he was not engaged in any profit-

making activities concerning the same.   He was not trading files with others through the use of

email or internet social media outlets.  As such, he would respectfully request the Court to

consider that his downloading activities were undertaken solely for his personal viewing which

should place him at the lower end of the severity scale for child pornography offenders.

Mr. Wolfe has substantial support network from his mother, father, and sister.  He timely

signed a plea agreement and plead guilty by way of information.

Mr. Wolfe would ask the Court for a designation recommendation that he be housed in a

BOP facility which has a sex offender treatment program.  The BOP's website indicates notes

that there are three such facilities located in the Eastern United States.  These would be FMC

Devens, located in Devens, Massachusetts, FCI Elkton, located in Lisbon, Ohio; and FCI

Petersburg, located in Hopewell Virginia.  FCI Elkton is his greatest preference.

Mr. Wolfe requests the Court to consider the absence of any past criminal convictions.

This shows that he poses a low risk of reengaging in criminal conduct upon his release or

otherwise posing a threat to anyone in his community.  This is the first conviction that he has had

in his life.  He is not a violent person as shown by the lack of any previous instance for any arrest

for any crime of violence or the filing of any domestic violence protection order against him,

other than the one filed by the mother of his child against him upon learning of the instant

offense.

Drugs and alcohol have never held any negative influence in his life.  His history does

not reflect any previous allegations of any improper solicitation or contacts with any minor.  His

zero criminal history score reflects that he has lived the majority of his adult life without posing

any threats to his neighbors and would continue to do so in the future.

(2)    **The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.**

Recently, on August 2, 2017, a court in this district applying § 2G2.2 granted a

significant variance sentence to a similarly situated defendant who was convicted of possession

of child pornography.  In  the United States of America v. Eddie D. Justice, Jr, 5:17-CR-0043,

the court determined that the defendant's advisory adjusted offense level under § 2G2.2 was 33

based on the following:

```
Base offense level:                                                 18
§ 2G2.2(b)(3)(F)  defendant knowingly engage in distribution:        2
§ 2G2.2(b)(4)  material portrayed sadistic or masochistic conduct    4
Or depictions of violence or the sexual abuse or exploitation of an
Infant or toddler:
§ 2G2.2(b)(2) material involved prepubescent minor or a minor who had 2
Not attained the age of 12 years:
```

4

§ 2G2.2(b)(6)  offense involved a computer for the transmission, receipt,     2
or distribution of the material, or for accessing with the intent to view the
material:

§ 2G2.2(b)(7(D) offense involved 600 or more images:                          5

Total Offense Level:                                                          33

With criminal history category of I along with a three level reduction for acceptance of

responsibility resulting in a  total offense level of 30 the defendant's advisory guideline range for

sentencing purposes was 97 to 121 months.

However, the court did not impose a guideline sentence.  Rather, it imposed a variance

sentence for the following reasons.  The court reasoned that the Sentencing Commission's

comprehensive report on child pornography guidelines in 2011 recognized that the sentencing

scheme for these offenses was not empirically based.  The court further noted that "[t]he

Commission also stated that the sentencing scheme has not kept pace with technology so that it,

and I quote, "no longer adequately distinguishes among offenders based on their degrees of

culpability."  See Similarly Situated Defendant Sentencing Transcript at p. 11;18, attached hereto

as Exhibit no. 1.

The court further explained that:

The typical offender uses a computer, has a large volume collection with wide
variety of graphic sexual images, including images of very young victims.  The
Commission explained that the sentencing enhancements relating to computer
usage and the type and volume of images possessed now apply to most of the
offenders and, thus fail to differentiate among offenders in terms of their
culpability.  In other words, perhaps without a computer being able to access 600
images would be a lot different.  It may very well distinguish amount offenders.
But based on the information gathered by the Sentencing Commission, it really
doesn't.  And the Commission's statistical database tracks application of the
various enhancements.

Id. at p. 12.

The court then noted as follows:

1.      In 2015 94.5 percent of people sentenced under Section § 2G2.2 received an enhancement for possession material depicting a child under 12.

2.      In 2015 94.4 percent of people sentenced under Section § 2G2.2 received an enhancement for use of a computer.

3.      In 2015 76 percent of people sentenced under Section § 2G2.2 received an enhancement for possession more than 600 images.

Id.

The court reasoned that these "percentages tell us that those particular enhancements are found in the general population of defendants who are violating this provision and they really do not show or differentiate, as the Commission would use the term, between culpability of one defendant versus another." Id. at pp. 12, 13.

The court further explained as follows:

> When an enhancement applies, in my opinion, so frequently that it is a rare exception when a defendant does not receive it, it no longer serves to distinguish between more culpable and less culpable defendants. The crime of possession of child pornography has changed with prevalence of computers and software like peer-to-peer networks. And the Sentencing Guidelines have not kept pace. That's admitted again by the Sentencing Commission. Therefore, I decline to apply those enhancements that to not serve to distinguish this defendant from others convicted of possession of child pornography.

Id. at pp 13, 14.

Based on the foregoing, the court issued a variance sentence. It sentenced the defendant to 40 months imprisonment based on a variance guideline of 37 to 46 months. To arrive at the variance guideline it used an adjusted total offense level of 24 rather than 33. To arrive at this adjusted level, the court did not apply the following enhancements: (1) the 2 level enhancement for using a computer; (2) the two level enhancement for possession material depicting a child under 12; or the 5 level enhancement for possession more than 600 images. The court then

granted a three level reduction for acceptance to arrive at a total offense level of 21 resulting in

the defendant's variance guideline.

Based on the foregoing factors, Mr. Wolfe requests this Court to consider his request for

a variance sentence of 60 months imprisonment.  To arrive at this sentence, he would ask the

Court to consider a variance guideline of 57 to 71 months.  The variance guideline would be

arrived at by decreasing his adjusted offense level by 7 levels to 28.  The 7 level reduction relates

to the same 9 level reduction utilized by the court as set forth above.  Then with acceptance of

responsibility his total offense level would be level 25.  At criminal history category I his

corresponding variance guideline would be 57 to 71 months.  The defendant submits that such a

sentence would meet the purposes of the sentencing factors and result in a sentence of

incarceration that it not greater than necessary.

Mr. Wolfe is not opposed to this Court requiring a special condition of electronically

monitored home confinement when he is released from incarceration. Several of the conditions

for supervised release will ensure that he does not return to the offense conduct.   He will be

subject to undergoing a sex offender risk assessment upon release from custody and participating

in a recommended sex offender treatment program which could last for several years. (PSR,

Paragraph 109).  This program will be in addition to any similar program in which Mr. Wolfe

enrolls while in BOP custody.  Mr. Wolfe will be subject to bi-annual polygraph testing to ensure

that he is complying with all of the conditions of his release.  He will not be allowed to possess a

computer or have any Internet access for any employment or education purpose without first

obtaining the permission of his Probation Officer.  A fifteen year term of supervised release

should be sufficient time for Mr. Wolfe to demonstrate to the Court that he can successfully

complete a sex offender treatment program and return to becoming a productive member of society.

The Court should further consider that this conviction carries significant collateral consequences for Mr. Wolfe.  His life will always be shadowed by the stain of having a federal felony conviction for a child pornography offense.  He will have to abide by the civil registration requirements as a sex offender for the remainder of his life.  There is an incentive for Mr. Wolfe to successfully complete any specific term of supervised release which is imposed for his case. As the offense of conviction is a Class C felony, this Court could impose a two year prison sentence upon finding that he violated the terms and conditions of his supervised release. 18 U.S.C. § 3583(e)(3).  Unlike other offenders who receive the maximum term of imprisonment for violations, Mr. Wolfe is subject to returning to supervision following any release from custody.  This Court would have the authority to re-impose and extend his term of supervision to the maximum term of life as provided by statute. 18 U.S.C. §§ 3583(e)(2), (k).

For the reasons set forth herein, defendant, Devin Wolfe, respectfully requests this Court to consider the cited 18 U.S.C. § 3553(a) factors to impose the suggested variance sentence in his case.

Respectfully submitted this 1st day of November, 2018.

> **DEVIN ALLEN WOLFE**
> **By Counsel**

s/Tim C. Carrico__
**Tim C. Carrico (WVSB #6771)**
**CARRICO LAW OFFICES, LC**
**105 Capitol Street, Suite 300**
**Charleston, West Virginia 25301**
**(304) 347-3800**